IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MAURICE JACKSON, | : | |
|---|---|---|
| | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | NO. 16-0174 |
| TOM MCGINLEY[1], et al., | : | |
| | : | |
| Respondent. | : | |

## ORDER

**AND NOW**, this 9th day of January, 2018, upon consideration of Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1), Respondent's Response (Doc. No. 18), Petitioner's Traverse (Doc. No. 24), Petitioner's Supplemental Motion for Discovery (Doc. No. 27), the Report and Recommendation of United States Magistrate Judge Elizabeth Hey (Doc. No. 28), and Petitioner's Objections (Doc. No. 33), I find as follows:

1. On August 1, 2008, a jury found Petitioner guilty of first degree murder, firearms not to be carried without a license, and possession of an instrument of crime. The convictions arose from an incident, on May 29, 2007, during which Petitioner shot at the victim four times, as the victim fled, ultimately hitting him in the back and killing him. On October 17, 2008, Petitioner was sentenced to an aggregate term of life in prison.

2. Petitioner timely filed a direct appeal asserting that the evidence was insufficient to sustain his conviction and that the verdicts were against the weight of the evidence. The

---

[1] Petitioner named Lawrence P. Mahally as the Respondent in this action. However, Petitioner is currently located in State Correctional Institute ("SCI") at Coal Township, Pennsylvania, and the current superintendent of SCI-Coal Township is Tom McGinley. Therefore, pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, I have named Mr. McGinley as the respondent in this case.

Pennsylvania Superior Court affirmed the verdict on March 17, 2011, finding sufficient evidence of Petitioner's intent to kill. On July 12, 2011, the Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal.

3. Petitioner filed a timely *pro se* petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541–9551, setting forth claims of ineffective assistance of both trial and appellate counsel, as well as claims of trial court error. On November 27, 2013, the court appointed counsel who filed an amended PCRA petition alleging modified claims of ineffective assistance of trial and appellate counsel. The PCRA court dismissed the petition without a hearing. The Superior Court affirmed on August 31, 2015. Although Petitioner's first request for allowance of appeal to the Pennsylvania Supreme Court was denied as untimely, he filed a second PCRA petition seeking leave to petition for allowance of appeal *nunc pro tunc*. That petition was granted and Petitioner filed his subsequent petition for allowance of appeal, which the Pennsylvania Supreme Court denied on September 13, 2016.

4. On January 4, 2016, during the pendency of his second PCRA petition, Petitioner filed the present *pro se* federal habeas petition setting forth four grounds for relief: (1) ineffective assistance of PCRA counsel for abandoning an ineffectiveness claim premised on trial counsel's failure to meet with Petitioner prior to trial to devise a defense strategy; (2) ineffective assistance of trial counsel for failing to meet with Petitioner prior to trial to discuss defense trial strategy; (3) insufficient evidence to support a first-degree murder conviction; and (4) trial court error for failing to grant a mistrial following instances of prosecutorial misconduct. In addition, Petitioner filed a motion for discovery and requested an evidentiary hearing.

2

5. On April 18, 2017, United States Magistrate Judge Elizabeth Hey issued a Report and Recommendation finding that Petitioner's claim of PCRA counsel ineffectiveness is not cognizable as a stand-alone claim, Petitioner's claim of ineffective assistance of trial counsel is procedurally defaulted, Petitioner's claim of insufficient evidence is meritless, and Petitioner's claim of trial court error is both procedurally defaulted and meritless.

6. Petitioner timely filed objections on June 1, 2017.

## LEGAL STANDARDS

7. Under 28 U.S.C. § 636(b)(1)(B), a district court judge may refer a habeas petition to a magistrate judge for proposed findings of fact and recommendations for disposition. When objections to a Report and Recommendation have been filed, the district court must make a *de novo* review of those portions of the report to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In performing this review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## DISCUSSION

8. Petitioner's objections to the Report and Recommendation challenge the Magistrate Judge's findings on all four of his habeas claims.

Claims One and Two

9. In claim one, Petitioner argues that PCRA counsel was ineffective for abandoning an ineffective assistance of trial counsel claim that Petitioner had included in his original *pro*

*se* petition. The Magistrate Judge correctly found that this claim is not cognizable as a stand-alone claim for habeas relief.

10. In claim two, Petitioner asserted the underlying ineffectiveness of trial counsel for failing to meet with Petitioner prior to trial to discuss strategy, assess Petitioner's demeanor and credibility, discuss new evidence from Petitioner's former girlfriend, and allow Petitioner adequate time to evaluate a plea bargain. The Magistrate Judge also correctly noted that this claim is procedurally defaulted because it was never raised in his counseled PCRA petition.

11. Finally, the Magistrate Judge remarked that, under Martinez v. Ryan, 566 U.S. 1 (2012), the PCRA counsel ineffectiveness claim (claim one) could serve as cause to excuse the procedural default of the underlying trial counsel ineffectiveness claim (claim two). To establish cause under Martinez, Petitioner had to "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that . . . the claim has some merit." Martinez, 566 U.S. at 14. Addressing that question, the Magistrate Judge concluded that Petitioner's underlying trial counsel ineffectiveness claim was not "substantial" for purposes of Martinez. The Report and Recommendation reasoned that Petitioner failed "to address how the trial counsel's strategy was inadequate, what alternative strategy counsel should have chosen to pursue, what information he was unable to share as a result of trial counsel's failure to meet with him face-to-face prior to trial, and whether he would have either testified or pled guilty had counsel performed differently." (R&R 12.) Because she deemed the underlying claim of trial counsel ineffectiveness not substantial, the Magistrate Judge concluded that procedural default could not be excused.

12. Petitioner objects to this finding and argues that his underlying trial counsel ineffectiveness claim was indeed "substantial." In support, he asserts that (1) trial counsel informed him of a plea bargain offering fifteen to thirty years in prison just hours prior to voir dire, and (2) trial counsel failed to meet face-to-face prior to trial to discuss "important aspects" of his case. (Pet.'s Objections 4.) Petitioner's Objections to the Magistrate Judge's Report go on to argue that "had it not been for trial counsel's lack of communication and delay in proposing said plea bargain, Petitioner would have had time to consider the deal and would have taken the deal." (Id.) According to Petitioner's Objections, trial counsel did not give Petitioner ample time to consider the deal and, in fact, she advised Petitioner to decline the deal "as she felt confident in winning the case and felt that 'the State did not have a strong case' for a conviction." (Id.) Finally, Petitioner's Objections assert that an evidentiary hearing regarding off-the-record conversations will disclose that Petitioner would have accepted the deal and that he lost the opportunity to take the more favorable sentence. (Id. at 5.)

13. Based on the record before me, I cannot find that Petitioner's underlying ineffective assistance of counsel claim for failure to timely communicate a plea bargain is meritless. Ineffective assistance of counsel claims are analyzed under the two-part test set forth in United States v. Strickland, 466 U.S. 668 (1984), to determine whether a defendant's constitutional rights have been violated by trial counsel's performance. Id. at 687. First, "the defendant must show that counsel's performance was deficient," *i.e.*, that it fell below "prevailing professional norms." Id. at 687–88. Second, "the defendant must show that the deficient performance prejudiced the defense," *i.e.* "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at

687. To establish an unfair trial, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

14. In a recent pair of cases, the Supreme Court has held that defense counsel has a duty to communicate formal plea offers to the defendant and that failure to properly communicate an offer may constitute ineffective assistance of counsel. Missouri v. Frye, 566 U.S. 133, 145 (2012). In order to effectively assist their clients in the plea bargaining process, counsel must provide a criminal defendant "enough information 'to make a reasonably informed decision whether to accept a plea offer.'" U.S. v. Bui, 795 F.3d 363, 366 (3d Cir. 2015) (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013) (further quotations omitted). To establish that counsel's improper communication of a plea offer constitutes ineffective assistance, a defendant must show that, but for counsel's failure, there is a reasonable probability "that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or the sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 566 U.S. 156, 164 (2012).

15. The United States Court of Appeals for the Third Circuit has suggested that proper analysis of ineffective assistance of counsel during the plea bargaining stage requires an evidentiary hearing unless the files and records of the case conclusively show that the petitioner is entitled to no relief. United States v. Vaughn, __ F. App'x __, 2017 WL 3484974, at *4–5 (3d Cir. Aug. 15, 2017). Numerous courts that have faced such claims on habeas corpus review have analyzed their merits based either on testimony developed during state court proceedings or testimony from a habeas evidentiary hearing. See, e.g.,

United States v. Giamo, 153 F. Supp. 3d 744, 755–56 (E.D. Pa. 2015) (analyzing ineffectiveness claim regarding plea offer based on evidentiary hearing testimony), aff'd, 665 F. App'x 154 (3d Cir. 2016); Boston v. Mooney, No. 14-229, 2015 WL 6674530, at *13 (E.D. Pa. Jan. 9, 2015) (addressing testimony regarding plea discussions from PCRA proceeding), report and recommendation adopted by 141 F. Supp. 3dd 352 (E.D. Pa. Oct. 29, 2015); Smith v. United States, No. 09-533, 2014 WL 4825369, at *3–10 (D. Del. Sept. 29, 2014) (holding an evidentiary hearing to address ineffective assistance of counsel claim for failure to communicate a plea agreement).

16. Here, Petitioner's ineffective assistance of trial counsel claim for failure to timely communicate a plea offer was never raised in the state court and, therefore, never addressed in any substantive fashion. Petitioner presented this claim in the federal proceedings,[2] and the Magistrate Judge appropriately framed the relevant question as whether the underlying ineffectiveness claim is "substantial"—*i.e.*, that it has some merit—such that PCRA counsel's failure to raise it was cause to excuse the procedural default. When addressing this question, however, the Magistrate Judge did not acknowledge the standards set forth in Frye and Lafler. Moreover, the Magistrate Judge did not have the benefit of a developed record from either prior state court proceedings or a federal evidentiary hearing in order to determine whether counsel failed to timely inform

---

[2] Specifically, in his Traverse, Petitioner argues that "[b]efore petitioner started to select his jury, the very first time, he met his trial counsel face to face was inside an attorney-client room, where trial counsel had inform[ed] petitioner of a plea bargain for 15 to 30 years. Petitioner contends that if trial counsel would have consulted pertinent aspects of his case with him prior to trial which would ha[ve] given him the appropriate amount of time to consider said guilty plea bargain for 15 to 30 years, petitioner could have expended this time consulting with his family." (Pet.'s Traverse, ECF No. 24, at p. 6.)

Petitioner of the plea offer or whether Petitioner would have pled guilty had counsel performed differently.

17. Taking Petitioner's allegations as true,[3] I find that Petitioner has, in fact, set forth a plausible claim of ineffective assistance of counsel which could have merit if substantiated by the evidence.[4] Petitioner contends that trial counsel failed to communicate the plea offer until just hours before trial and then recommended that he not take it, thereby depriving Petitioner of the opportunity to meaningfully consider the plea offer and consult with his family. If testimony establishes that trial counsel knew of the plea offer prior to that date and never told Petitioner about it, trial counsel could be deemed to have rendered a deficient performance under the first prong of Strickland.

18. Moreover, Petitioner has plausibly alleged prejudice under the second prong of Strickland in that the plea bargain allegedly offered fifteen to thirty years' imprisonment, and Petitioner ultimately received a life sentence after trial. Whether that plea offer would have been presented to the state court and whether the court would have accepted its terms are not facts that Petitioner can establish absent some discovery into off-the-record conversations, what defense counsel knew and when, and what plausibly could have occurred had the plea agreement been put before the trial court.

---

[3] The court must accept the truth of the petitioner's allegations unless they are clearly frivolous on the basis of the existing record. Vaughn, 2017 WL 3484974, at *3.

[4] Petitioner requested an evidentiary hearing to explore, in part, trial counsel's failure to timely inform Petitioner of a proposed plea agreement. (Pl.'s Request for an Evidentiary Hrg., ECF No. 25.) While I leave the decision regarding an evidentiary hearing to the Magistrate Judge, I note that the current record does not provide a sufficient basis on which to adjudicate Petitioner's ineffectiveness claim.

19. Accordingly, I decline to adopt the Report and Recommendation as to claims one and two. I will refer the case back to the Magistrate Judge for an evidentiary hearing and a supplemental report and recommendation on these issues.

Claim Three

20. Claim three of Petitioner's habeas petition alleges that the evidence was insufficient to support his conviction for first-degree murder because the government did not demonstrate that he possessed the specific intent to kill.

21. In the Report and Recommendation, the Magistrate Judge agrees with the Pennsylvania Superior Court's assessment of this issue on direct appeal. According to state court, the evidence established that Petitioner shot at the victim as the victim fled from Petitioner, and that one of the bullets entered the victim's back and penetrated multiple organs. An eyewitness, Mylan Harrison, saw Petitioner and the victim together just prior to the shooting and observed Petitioner shoot the victim in the back from a distance of fifteen feet. The Magistrate Judge concluded that, based on this evidence, the Commonwealth had met its burden of establishing that Petitioner possessed the specific intent to kill by showing that Petitioner used a deadly weapon upon a vital part of the victim's body.

22. Petitioner objects on the grounds that eyewitness Harrison was not reliable. Petitioner reasons that, at trial, Harrison stated that he witnessed the entire shooting. (N.T. 7/29/08, pp. 192–93.) When confronted with prior preliminary hearing testimony, however, Harrison admitted that he did not observe Petitioner actually shooting and, because he ran away, did not see what happened to the victim after the shooting. (N.T. 7/29/08, pp. 263–64, 268.) Petitioner now argues:

> Commonwealth witness Harrison did not know what the pair were talking about before the shooting. He did not know what the

> petitioner's intent was. Harrison observed no arguing, shouting, or any actions by the petitioner or the decedent to suggest that the decedent was about to be shot. Although the victim was shot through a vital part of the body, the [C]ommonwealth failed to present any evidence that the shooter was aiming at a vital organ or intended to shoot a vital organ. The eyewitness did not see anything in the seconds before the shooting or in the minute or so prior to the shooting saw nothing that would foreshadow a shooting.

(Pet.'s Objections 8.) Petitioner contends that, absent Harrison's testimony, the Commonwealth could not meet its burden of proving specific intent to kill.

23. I find no merit to this objection. First-degree murder is homicide committed with an intent to kill 18 Pa. Cons. Stat. § 2502(a). Intentional killing is "[k]illing by means of . . . willful, deliberate and premeditated killing." Id. § 2502(d). A "willful, deliberate and premeditated killing" occurs where the actor has manifested the specific intent to end the life of the victim. Commonwealth v. Nelson, 523 A.2d 728, 732 (Pa. 1987). "The use of a deadly weapon on a vital part of the human body is sufficient to establish the specific intent to kill." Commonwealth v. Walker, 656 A.2d 90, 95 (Pa. 1995); see also Commonwealth v. Randolph, 873 A.2d 1277, 1281 (Pa. 2005) (evidence that defendant shot victim, who died from a gunshot wound that entered his back and passed through his heart, was sufficient to establish specific intent to kill).

24. Here, Harrison testified that he saw Petitioner and the victim on the night of the crime, that there was no one else on the block at the time, and that he heard gunshots and ran. (N.T. 7/29/08, pp. 192–93, 262–64.) That specific testimony is undisputed and unchallenged by Petitioner. The medical examiner then testified that the victim died from a perforating gunshot wound to the back that exited through his chest. (Id. at p. 279.) Based on such evidence, the jury could have concluded that Petitioner acted with specific intent to kill. Therefore, I will overrule this objection.

Claim Four

25. In claim four of his petition for habeas relief, petitioner argued that the trial court erred by failing to grant Petitioner a mistrial following two alleged incidents of prosecutorial misconduct: (1) the prosecutor's opening statement where he stated that both the victim and the victim's brother had been murdered and the victim's mother was suffering as a result; and (2) the prosecutor's question on cross-examination where he asked how many times the witness had seen Petitioner with a gun, which was not a fact in evidence.

26. The Magistrate Judge concluded that this claim was procedurally defaulted because it was not presented in either his direct appeal or his PCRA appeal. Furthermore, she rejected Petitioner's attempt to establish cause for his default. Finally, the Magistrate Judge remarked that even if she were to construe the claim as one of ineffective assistance of counsel for failing to request a mistrial due to prosecutorial misconduct (a claim Petitioner had exhausted), both the Superior Court on direct appeal and the PCRA court properly found these claims meritless because the trial court gave curative and/or cautionary instructions to the jury.

27. Petitioner now objects to the R&R only to the extent it found that the prosecutor's comment regarding the murder of the victim's brother was not grossly inflammatory.[5] Petitioner contends that this comment prevented a fair trial and could not be cured by a cautionary instruction.

28. I agree with the Magistrate Judge that the prosecutor's comments did not deprive Petitioner of a fair trial. The Third Circuit maintains a presumption that juries follow the

---

[5] Petitioner also objects to the finding that this claim is procedurally defaulted. I need not address this argument because I agree with the Magistrate Judge's finding that the claim is substantively meritless. Petitioner does not raise an objection as to the R&R's findings on the prosecutor's allegedly prejudicial cross-examination question.

instructions given by district courts unless there is an "overwhelming possibility" that the jury will be unable to follow it and a strong likelihood that the effect of the evidence/statement would be "devastating" to the defendant. United States v. Hakim, 344 F.3d 324, 330 (3d Cir. 2003) (citations omitted). Where a curative instruction is given almost immediately after the objection, the risk of prejudice is drastically minimized. Id. (citing cases).

29. Here, during opening statements, the prosecutor stated, "you will find, despite an earlier conviction for theft in New Jersey for which Mylan Harrison [the eyewitness] received probation, that he was not on any probation when he called the detectives himself and told them what he saw. Because he knew this was Ms. McCorey's second son to go down this way." (N.T. 7/29/08, p. 50.) Immediately after the prosecutor referenced the murder of the victim's brother, defense counsel objected. Id. The court sustained the objection and struck the statement from the record. At the end of the closing statement, the trial judge gave the following cautionary instruction:

> Jurors, during the opening argument, counsel, Mr. Sax, mentioned that the victim's mother had another son who was victimized by a murder as well. That is in no way relevant to this case. This defendant is in no way involved in that case and has not been charged in any way regarding that case. Therefore, you should totally disregard that comment when considering the evidence in this case. It is not relevant to the issues involved in this case.

(N.T. 7/29/08, p. 68.) The trial judge subsequently reminded the jury, at the close of trial, that statements of lawyers are not evidence. (N.T. 7/31/08, p. 193.)

30. Given these instructions, I cannot find that Petitioner was deprived of a fair proceeding based on the trial court's refusal to grant a mistrial. The offending comments were made during opening statements. The jury was specifically told that the murder of the victim's

12

brother had nothing to do with the case before it and that Petitioner had no involvement in that matter. Petitioner does not identify what prejudice remains after these curative instructions. Accordingly, I agree with the R&R and will overrule Petitioner's objection on this basis.

**WHEREFORE**, it is hereby **ORDERED** that:

1. Petitioner's Objections to the Report and Recommendation as to claims one and two of the Petition for Writ of Habeas Corpus are **SUSTAINED**;

2. Petitioner's Objections to the Report and Recommendation as to claims three and four of the Petition for Writ of Habeas Corpus are **OVERRULED**;

3. The Report and Recommendation (Doc. No. 28) is **ADOPTED IN PART and REJECTED IN PART** as set forth in this Order;

4. The Petition for Writ of Habeas Corpus is **REFERRED** back to United States Magistrate Judge Elizabeth Hey for appointment of counsel, further briefing, any necessary evidentiary hearing, and a supplemental report and recommendation on the sole issue of the merits of Petitioner's claim that trial counsel was ineffective for failing to discuss a plea bargain with him until just prior to the start of trial;

5. Petitioner's Supplemental Motion for Discovery (Doc. No. 27) is **DENIED AS MOOT**.

        **BY THE COURT:**

        **/s/ Mitchell S. Goldberg**
        _____
        **Mitchell S. Goldberg,     J.**